UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MARK HENDERSON, )
)
    *Plaintiff* )
)
v. ) No. 2:10-cv-68-DBH
)
ATLANTIC PELAGIC SEAFOOD, LLC, )
)
    *Defendant* )

### RECOMMENDED DECISION ON MOTION TO SET ASIDE DEFAULT AND FILE LATE ANSWER

Defendant Atlantic Pelagic Seafood, LLC ("APS") moves to set aside the default entered against it on June 22, 2010, four days after it failed to timely answer the instant complaint, and to file a late answer. *See* Defendant's Motion To Set Aside Default and File Answer Late ("Motion") (Docket No. 26) at 1; *see also* Docket Nos. 10, 13. The plaintiff opposes that request. *See* Plaintiff's Objection to Defendant's Motion To Set Aside Default and File Late Answer ("Objection") (Docket No. 28) at 1-2. For the reasons that follow, I recommend that the motion be denied.[1]

### I. Applicable Legal Standards

The defendant's motion implicates Federal Rule of Civil Procedure 55(c), pursuant to which "[t]he court may set aside an entry of default for good cause[.]" This court has observed: "Unlike the more stringent standard of 'excusable neglect' applied to a motion for relief from *final* judgments pursuant to Federal Rule of Civil Procedure 60(b), the 'good cause' criterion applied to motions to set aside entries of default is more liberal, setting forth a lower threshold

---

[1] The First Circuit has observed that "[i]t is not clear whether [a] Rule 55(c) motion to vacate [a] default could be regarded as a [non-dispositive] 'pretrial' motion" of the sort that a United States Magistrate Judge may decide, rather than tendering a recommended decision to an Article III judge. *Conetta v. National Hair Care Ctrs., Inc.*, 236 F.3d 67, 74 (1st Cir. 2001). In an abundance of caution, I therefore issue a recommended decision on the defendant's motion.

for relief." *Snyder v. Talbot*, 836 F. Supp. 26, 28 (D. Me. 1993) (citations omitted) (emphasis in original). "This lower threshold is justified by the fact that an entry of default is a clerical act, and not a final judgment issued by the Court. It is also in keeping with the philosophy that, if at all possible, actions should be decided on their merits." *Id*. at 28-29 (citations omitted).

There is no mechanical formula for determining whether good cause exists, and courts may consider a host of relevant factors. *See, e.g., Indigo Am., Inc. v. Big Impressions, LLC*, 597 F.3d 1, 3 (1st Cir. 2010). Factors typically considered include: "(1) whether the default was willful; (2) whether setting it aside would prejudice the adversary[;] (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; and (7) the timing of the motion." *McKinnon v. Kwong Wah Rest*., 83 F.3d 498, 503 (1st Cir. 1996). These factors are not "talismanic," and the court may consider others as well. *See, e.g., CJC Holdings, Inc. v. Wright & Lato, Inc*., 979 F.2d 60, 64 (5th Cir. 1992). Ultimately, the burden of demonstrating good cause is with the party seeking to set aside the default. *See, e.g., Indigo Am*., 597 F.3d at 3.

## II. Factual and Procedural Background

The plaintiff filed the instant complaint on February 17, 2010, against APS and James Odlin, seeking recompense for injuries sustained in February 2007 when a dock hatch closed on his head during the course of his duties as a crewman aboard the F/V American Freedom. *See* Complaint (Docket No. 1) ¶¶ 1-7. The plaintiff alleged that, at all relevant times, both APS and Odlin owned and operated the F/V American Freedom and employed him as a crewman aboard that vessel. *See id*. ¶¶ 2-3. He brought a Jones Act claim (Count I), an unseaworthiness claim (Count II), and a claim for any maintenance and cure owing as of the time of trial (Count III). *See id*. ¶¶ 8-10.

Service was effectuated upon APS through (i) its agent, Corporation Trust Company, on May 4, 2010, (ii) the Delaware Secretary of State on May 11, 2010, and (iii) Odlin on May 19, 2010. *See* Docket Nos. 5-7. On June 9, 2010, the plaintiff filed a notice of voluntary dismissal of Odlin, leaving APS as the sole defendant. *See* Docket No. 11. Following the grant of a motion by the plaintiff to extend time for APS to answer the complaint, *see* Docket Nos. 9-10, its answer was due on June 18, 2010, *see* Docket No. 10. No answer was timely filed. *See generally* ECF Docket. On June 21, 2010, the plaintiff moved for the entry of default against APS, and that motion was granted the following day. *See* Docket Nos. 12-13. On July 9, 2010, the plaintiff moved for a default judgment against APS, requesting the scheduling of a damages hearing after September 20, 2010. *See* Docket No. 14. On July 15, 2010, the court scheduled the requested damages hearing for October 8, 2010, and ordered the plaintiff to make certain pre-hearing filings by October 1, 2010. *See* Docket Nos. 16-18.

On September 9, 2010, I held an emergency teleconference to resolve the plaintiff's objection to the request of Attorney William ("Sandy") Welte to postpone a telephonic deposition of a treating psychiatrist scheduled for that day to facilitate Welte's participation. *See* Docket No. 20. Welte explained that he had learned only that morning that he was authorized to enter an appearance on behalf of the defendant. *See id*. at 1. The plaintiff's counsel, Terrance Duddy, did not object to Welte's participation in the deposition but did object to its postponement, noting that the deposition had been long planned in preparation for the upcoming damages hearing. *See id*. at 2. I sustained the plaintiff's objection without prejudice to a future request by the defendant to reopen the psychiatrist's deposition. *See id*.

On September 13, 2010, Welte entered an appearance on behalf of APS. *See* Docket No. 21. On September 20, 2010, APS filed a motion to continue the scheduled damages hearing.

3

*See* Docket No. 22. I granted that motion, continuing the damages hearing until such time as the court adjudicated APS's anticipated motion to set aside default, which I ordered be filed no later than October 4, 2010. *See* Docket No. 25. On October 4, the instant motion was filed. *See* Motion.

At the time of the plaintiff's injury, APS was a member of, and was insured by, The American Club, a nonprofit mutual insurance association operated by its members for their exclusive benefit. *See* Defendant's Reply to Plaintiff's Response in Opposition to Motion To Set Aside Default and Answer Late ("Reply") (Docket No. 38) at 3. The American Club provides protection and indemnity ("P&I") insurance, which indemnifies ship owners and charterers against third-party liabilities in commercial operations. *See id.* at 3-4.

Provisions of the policy in effect as of the time of the plaintiff's injury included the following:

> **General Conditions in Regard to Claims**
> **15** Without prejudice to any other provisions of these Rules and without waiving any of the Association's rights hereunder, the Managers may at any and all times appoint and employ on behalf of a Member, upon such terms as the Managers may think fit, lawyers, surveyors or other persons for the purpose of dealing with any matter liable to give rise to a claim by a Member upon the Association, including investigating or advising upon any such matter and taking or defending legal or other proceedings in connection therewith. The Managers may also at any time discontinue such employment if they think fit.
>
> **17** A Member shall take and continue to take all such steps as may be reasonable for the purpose of averting or minimizing any expense or liability in respect whereof he may be insured by the Association.
>
> **Power of the Managers in Regard to Claims**
> **22** The Managers shall have the right if they so decide to control or direct the conduct of any claim or legal or other proceedings relating to any liability, loss or damage in respect whereof a Member is or may be insured in whole or in part, and to require a Member to settle, compromise or otherwise dispose of such claim or proceedings in such manner and upon such terms as the Managers see fit.

> **28** It is a condition precedent of a Member's right to recover from the funds of the Association in respect of any liabilities, costs or expenses that he shall first have discharged and paid the same out of funds belonging to him unconditionally and not by way of loan or otherwise.

Affidavit (Second) of William H. Welte ("Second Welte Aff.") (Docket No. 39) ¶¶ 2-6.

From February 27, 2007, through August 3, 2009, payments totaling $77,180.33 were made to or on behalf of the plaintiff for unearned wages, maintenance, medical expenses, and transportation. *See* Affidavit of R. Terrance Duddy, Esq. ("Duddy Aff.") (Docket No. 28-2), attached to Objection, ¶ 2 & Exh. A (Docket No. 29-1) thereto at 4.[2] In a series of emails dated August 7, 2009, to August 24, 2009, Robert Windes, an attorney for the plaintiff, corresponded with Sonja Adams of The Polaris Group, an independent claims adjusting firm, concerning possible settlement or, alternatively, litigation of the plaintiff's case. *See* Exh. A (Docket No. 29) to Duddy Aff. at 4-6.

By letter to Windes dated August 11, 2009, Adams forwarded to Windes copies of the incident report, itemization of maritime remedies paid to date, crew contract signed by the plaintiff, medical records received to date, and a list of medical providers requested by Windes. *See* Exh. A (Docket No. 29-1) to Duddy Aff. at 1. By letter to Windes dated December 11, 2009, Philip W. Sanford, an attorney for The American Club, stated:

> The American Club insures this vessel owner and employer regarding Mr. Henderson's injury, but despite efforts, can identify no insured at this point in time. Despite best efforts by the American Club, particularly working through Polaris, they have been unable to reach any entity, individual or otherwise, who can speak on behalf of this employer and vessel owner. It appears that the vessel is probably sold, and that offers up some suggestion that the entity owning the vessel was either sold, or is now defunct.

Exh. A (Docket No. 33) to Duddy Aff. at 1. Sanford stated that, in the absence of authority of the insured, no one was in a position to agree to toll the statute of limitations or to stipulate to the

---

[2] Exhibit A spans Docket Nos. 29 to 35. For ease of reference, I have cited the docket number, and page number therein, at which specific cited documents comprising Exhibit A are found.

venue for the filing of a complaint, as requested by counsel for the plaintiff. *See id*. However, he stated: "The American Club has asked me to advise you that they will enter into settlement discussions in an effort to resolve the case for the benefit of both Mr. Henderson and their absent insured." *Id*.

By letter dated April 1, 2010, to both Adams and Sanford, Angela Wong, an attorney for the plaintiff, sought further maintenance payments. *See id.* at 4. By letter dated April 22, 2010, Kristin Dietz of Polaris responded:

> Despite our best efforts, we have been unable to locate any current owner or agent of the F/V "AMERICAN FREEDOM". In the absence of the vessel owner, The Polaris Group, Ltd., an independent claims adjusting firm, is not authorized to approve the provision of further maritime remedies to Mr. Henderson.

Exh. A (Docket No. 34-2) to Duddy Aff. at 1. Sanford also responded by email to Wong of the same date, stating:

> [W]e took the time to renew our efforts to locate and contact any entity that could speak for the employer. I see that you filed a complaint in Portland Maine. I am not aware of any service to date, but pls advise if you have managed to serve any entity that could respond.
>
> From my research it appears that the LLC was a Delaware entity, but is no longer in good standing. The vessel has been removed from the Coast Guard record. Our offices have never had contact with the employer. Polaris did at one time, but has not had contact for many months. Neither the underwriter nor the adjuster ha[s] any contact with the employing entity or assured, and have not for some time.
>
> At this point in time the underwriter is simply not in a position to respond on behalf of the assured.

*Id.* at 3.[3]

By letter dated May 7, 2010, Wong advised Sanford and Dietz that the summons and complaint had been sent out for service upon the defendant's registered agent and the Delaware

---

[3] Wong made a similar request by letter dated June 15, 2010, *see* Exh. A (Docket No. 34-4) to Duddy Aff. at 5, and received a similar response from Sanford, *see* Exh. A (Docket No. 35-1) to Duddy Aff. at 4.

Secretary of State, asked that they advise when they were in a position to respond to the suit on behalf of the assured, and sought reimbursement for the plaintiff's ongoing out-of-pocket medical expense. *See* Exh. A (Docket No. 34-3) to Duddy Aff. at 1. By letter dated May 12, 2010, Sanford responded:

> I do not represent Atlantic Pelagic Seafood, LLC, the defendant you have named. I understand as well that Polaris has had to notify you that they have no ability to act on behalf of the employer. In an effort to share with you the results of our efforts to locate the insured on behalf of its underwriter, I advised you that we determined the insured entity was organized under laws of the State of Delaware, but no longer in good standing. I am not sure how that helps you with service.
>
> Please do advise when you have accomplished service, and have made contact with the named defendant to assert Mr. Henderson's claim for renewed maintenance and cure. I would like to promptly keep the underwriter advised of your progress.

*Id*. at 5.

The plaintiff's attorneys promptly advised Sanford and/or Dietz when (i) service of the summons of the complaint was made upon APS, *see id.* at 7 (letter dated May 18, 2010); Exh. A (Docket No. 34-4) to Duddy Aff. at 2 (letter dated May 27, 2010), (ii) the court entered a default against APS, *see* Exh. A (Docket No. 35-2) to Duddy Aff. at 2-7 (letter dated June 23, 2010), (iii) the plaintiff moved for a damages hearing and for the entry of a default judgment against APS, *see* Exh. A (Docket No. 35-3) to Duddy Aff. at 2 (letter dated July 12, 2010), and (iv) the damages hearing was set for October 8, 2010, *see id.* at 4 (letter dated July 15, 2010).

In March 2008, the members of APS sold 100 percent of their interests to Marine Recycling Corporation. *See* Affidavit of William H. Welte ("First Welte Aff.") (Docket No. 27) ¶ 2 & Exh. A (Docket No. 27-1) thereto. United States Coast Guard documentation indicates that the F/V American Freedom was deleted from documentation on July 10, 2008, at which point the owner of record was an entity other than APS. *See* Exhs. E-F (Docket Nos. 37-4, 37-5)

to Duddy Aff. No certificate of cancellation of APS's certificate of formation has been filed with the Delaware Secretary of State's Office. *See* Motion at 4; Objection at 5. APS remains a recognized limited liability company under Delaware law, albeit no longer in good standing. *See* Exh. D (Docket No. 37-3) to Duddy Aff.

### III. Discussion

The burden of demonstrating good cause rests with the party seeking to set aside a default. *See, e.g., Indigo Am.*, 597 F.3d at 3. As the plaintiff points out, APS itself has presented no argument that the default against it should be set aside. *See* Objection at 5, 7-8; Reply at 3-4. Rather, its insurer, The American Club, exercising its option to hire counsel to defend its insured, has sought to show good cause on its behalf. *See id*. This in itself raises a serious question whether *APS* has met its burden of showing good cause for the set-aside of the default. In any event, the excuse offered on its behalf falls short on its merits: that APS was a *de facto* defunct entity, incapable of having acted willfully, and had no independent ability to make a timely response to the complaint. *See* Motion at 4, 10. Its inability to act is said to be borne out by the plaintiff's own evidentiary submissions, which corroborate that, while APS initially was in touch with Polaris concerning the plaintiff's claim, Polaris lost touch with APS long before the filing of the instant complaint, The American Club never was in contact with APS, and both were unsuccessful in efforts to locate anyone in a position to speak for that entity. *See* Reply at 2-3.

This argument minimizes the import of the fact that, for purposes of Delaware law, APS continues to exist, no certificate of cancellation having been filed. *See* Exh. D (Docket No. 37-3) to Duddy Aff; Del. Code Ann. tit. 6, § 18-203 ("A certificate of cancellation shall be filed in the office of the Secretary of State to accomplish the cancellation of a certificate of formation upon the dissolution and the completion of winding up of a limited liability company[.]"); *id*. § 18-

201(b) ("the existence of [a limited liability company] as a separate legal entity shall continue until cancellation of the limited liability company's certificate of formation").[4] As an extant legal entity, APS was required by Delaware law to maintain in Delaware a registered office and registered agent for service of process and to provide to its registered agent, and update from time to time as necessary, the name, business address, and business telephone number of a natural person who was a member, manager, officer, employee, or designated agent of the limited liability company and authorized to receive communications from its registered agent. *See id*. §§ 18-104(a)(1)-(2) & (g).

The plaintiff served the summons and complaint upon APS by three different means, and no one contests the validity of that service. APS was properly served notice of this action and was obliged to respond or risk default.[5] More importantly, as the plaintiff emphasizes, *see* Objection at 7-8, nothing about APS's status has changed since the summons and complaint were served upon it in May 2010. The only thing that has changed is the willingness of its insurer to step in and defend this complaint on its behalf. *See* Reply at 4. Although, as APS argues, APS and its insurer are distinct entities with separate interests and should not be conflated, *see* Motion at 10; Reply at 4-5, the insurer has rendered its actions and inactions relevant to consideration of the instant motion by choosing, at this juncture, to file this motion on behalf of its absent insured. *See Reynolds v. Bar Harbor Whale Watch Co*., No. CIV. 00-102-B-H, 2001 WL 26205, at *2 (D. Me. Jan. 9, 2001) (rec. dec., *aff'd* Feb. 13, 2001) (taking into account insurer's conduct on behalf of defendant that relied on insurer to deal with complaint).

---

[4] APS observes that Delaware law, in certain circumstances, recognizes that dissolution of a limited liability company occurs "at any time there are no members." Motion at 4 n.2 (quoting Del. Code Ann. tit. 6, § 18-801(a)(4)). However, it does not argue that it was effectively dissolved in accordance with this provision. *See id*.

[5] As the plaintiff suggests, *see* Objection at 5-6, to the extent that APS was incapable of responding because it was *de facto* defunct and/or because it had not updated its registered agent as to its whereabouts, it was the author of its own difficulty in that it failed to comply with applicable requirements of Delaware law, *i.e*., to file a certificate of cancellation and/or to provide its registered agent with updated contact information. APS has offered no explanation for that failure.

The American Club has been on notice of the existence of the plaintiff's claim since on or shortly after the date of his alleged injury and has been kept apprised of every major development in the instant suit. While it is true, as APS notes, that the insurer was not contractually obliged to hire counsel to defend this case, *see* Reply at 4; Second Welte Aff. ¶¶ 3-6, it *could have* chosen to do so at any point along the way. Its decision not to hire counsel at the outset was willful. Its change of heart, evidently for its own strategic purposes, is the moving force behind this motion.[6] A change of heart is not the sort of change that justifies the requested relief.

For all of these reasons, the first and fourth factors – the willfulness of the default and the nature of the defendant's explanation for it – weigh heavily against the grant of the motion. The seventh factor, the timing of the instant motion, likewise cuts against APS. The instant motion was filed approximately three and a half months after APS's answer was due and default was entered, and on the eve of a long-planned damages hearing. In this district, delays of approximately that length or of even shorter duration have been deemed to weigh in favor of a denial of a Rule 55(c) motion. *See, e.g., United States v. Ponte*, 246 F. Supp.2d 74, 81 (D. Me. 2003) (delay of between six weeks and two and a half months after entry of default); *Reynolds*, 2001 WL 26205, at *4 (delay until court had already scheduled damages hearing and more than four months after defendant had learned of lawsuit); *Maine Nat'l Bank v. F/V Cecily B*, 116 F.R.D. 66, 69 (D. Me. 1987) (delay of 22 days from date answer was due).

Turning to the fifth factor, the good faith of the parties, as APS suggests, *see* Motion at 10, there is no evidence that its failure to file a timely answer was the product of bad faith. Nor is it apparent that the timing of the insurer's decisions on APS's behalf reflect bad faith *versus*

---

[6] The American Club apparently seeks to lift the entry of default against APS as a result of concerns about potential insurer liability pursuant to Maine's reach and apply statutes. *See* Motion at 10; Objection at 7-8; Reply at 4 n.4.

self-interest.  On the other hand, the plaintiff has at all relevant times affirmatively displayed good faith, keeping both The American Club and Polaris promptly apprised of major developments in this lawsuit.  Consideration of the "good faith" factor hence weighs, at least slightly, against the grant of the instant motion.

The remaining three factors – the second (prejudice to the plaintiff), third (the existence of a meritorious defense), and sixth (the amount of money involved) – favor APS.  The plaintiff has not shown that he will suffer any substantial prejudice were the motion granted.  *See* Objection at 9.  And he concedes that APS has met the low threshold for presenting a meritorious defense and that, given his severe and permanent injuries, the amount of money involved is substantial.  *See id.*; *see also, e.g., Lucerne Farms v. Baling Techs., Inc.*, 208 F.R.D. 463, 466 (D. Me. 2002) (to establish the existence of a meritorious defense for purposes of a Rule 55(c) motion, a defendant "need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense") (citation and internal quotation marks omitted).

Nonetheless, a lack of prejudice to the plaintiff is not dispositive.  *See, e.g., Reynolds*, 2001 WL 26205, at *3 ("Although this factor appears to weigh in Defendant's favor, I would view it as relatively neutral on these facts.  If great weight were given to this consideration, a Defendant could always ignore a court summons until he got around to answering it without consequence unless something dire happened to Plaintiff's case in the interim."); *F/V Cecily B*, 116 F.R.D. at 69 ("Even though courts frequently express a concern for the party not in default, they generally conclude that no substantial prejudice will be caused by granting relief in the case before them.  But a showing of *substantial* prejudice is not a *sine qua non* to the denial of a Rule 55(c) motion; it is merely one of the factors a court should consider.") (citation and internal punctuation omitted) (emphasis in original).  Although the remaining two factors carry heft, *see*

*Key Bank of Me. v. Tablecloth Textile Co.*, 74 F.3d 349, 356 (1st Cir. 1996) (noting "our traditional preference for resolution of cases on the merits while giving due consideration to practical requirements of judicial administration"), they can be outweighed by other factors, *see, e.g., Conetta*, 236 F.3d at 75 ("[T]he critical factor in the equation is that [the defendant's] president knew in timely fashion that the amended complaint had been filed and chose for improper reasons not to defend the case."); *Grover v. Commercial Ins. Co.*, 108 F.R.D. 366, 371 (D. Me. 1985) ("Although the case is monetarily significant and there has been little prejudice to Plaintiff by the default, Defendant has offered only the weakest of excuses for its default.").

Weighing all relevant factors *in toto*, I conclude, and recommend that the court find, that APS has not met its burden of showing good cause to lift the entry of default against it. At bottom, this motion stems from an insurer's strategic decision, several months after the passage of its absent insured's deadline to answer the complaint and on the eve of a scheduled damages hearing, to step in and litigate this case.

### IV. Conclusion

For the foregoing reasons, I recommend that the motion of APS to lift the entry of default against it and permit the late filing of an answer be **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 17th day of November, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge